United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Arthur Friedman,<br><br>                                  Debtor. | Bankruptcy No. 12-bk-40168<br><br>Chapter 7<br><br>Adversary No. 13-ap-01199 |
| American Eagle Bank,<br><br>                                 Plaintiff,<br><br>           v.<br><br>Arthur Friedman,<br><br>                               Defendant. | |

## MEMORANDUM OPINION ON AMERICAN EAGLE BANK'S MOTION FOR SUMMARY JUDGMENT

This Adversary Proceeding relates to the bankruptcy case filed by debtor-defendant Arthur Friedman (the "Debtor") under Chapter 7 of the Bankruptcy Code. Creditor-plaintiff American Eagle Bank (the "Plaintiff") filed its three-count Complaint (Adv. Dkt. 1)[1] on September 30, 2013. Counts I and II seek to determine the dischargeability of the Plaintiff's debt under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), respectively, and Count III objects to the Debtor's discharge under 11 U.S.C. §§ 727(a)(3) and (a)(5). On March 25, 2015, the Plaintiff filed an Amended Complaint (Adv. Dkt. 26), adding a Count IV objecting to the Debtor's discharge under 11 U.S.C. §§ 727(a)(2), (a)(4), (a)(5) and (a)(7). The Debtor filed an answer to the Complaint on October 31, 2013 (Adv. Dkt. 5) and an answer to the Amended Complaint on April 24, 2015 (Adv. Dkt. 31).

On or about August 4, 2015, the Plaintiff served the Debtor with Requests for Admission under Fed. R. Civ. P. 36, made applicable by Fed. R. Bankr. P. 7036. The Debtor never responded to the Plaintiff's Requests for Admission. The Plaintiff then brought this Motion for

---

[1] 'Adv. Dkt.' refers to the docket of this adversary proceeding; *American Eagle Bank v. Arthur Friedman*, 13-ap-01199. 'Dkt.' refers to the docket of the affiliated bankruptcy case; *In re Arthur Friedman*, 12-bk-401268.

Summary Judgment as to Count IV of the Amended Complaint based on the Requests for Admission having been deemed admitted under Fed. R. Civ. P. 36(a)(3). For following reasons, summary judgment will be granted in favor of the Plaintiff on Count IV.

## I.    JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O). It seeks to determine the dischargeability of a debt. Therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

## II.    UNCONTESTED FACTS

The Plaintiff filed its Statement of Material Facts as required by Rules 7056-1 of the Local Bankruptcy Rules for the Northern District of Illinois. The Debtor, however, failed to file an opposing statement of material facts as required by Local Rule 7056-2. Because the Debtor did not provide a statement of facts controverting the Plaintiff's statement, "[a]ll material facts set forth in the [Plaintiff's] statement . . . will be deemed to be admitted . . . ." Local Rule 7056-2(B); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Therefore, the following facts are taken from the Plaintiff's Statement of Material Facts, as well

2

as from documents referenced therein, mainly the Debtor's Answer to the Amended Complaint and the Requests for Admission.

The Debtor was one of the principal owners and president of an automobile leasing company known as Prestige Leasing, Inc. ("Prestige"). Statement of Material Facts, ¶¶ 13-14 (Adv. Dkt. 39-1). Prior to the Debtor filing for bankruptcy, the Debtor was a party to a lawsuit that was ultimately settled (hereinafter "Lawsuit Settlement" or "Settlement"). *Id.* at ¶¶ 15-17. As part of the Settlement, the Debtor received $75,000 annually, minus his attorneys' fees. *Id.* at ¶ 18. Payments were made biannually on April 15 and September 15. *Id.* at ¶¶ 18-19. The Debtor received these payments from 2006 through 2013. *Id.*

The Settlement payments were made to Prestige until it closed in 2011, after which payments were paid to the Debtor. *Id.* at ¶ 22. However, the Debtor made specific instructions as to how he would receive the payments. *Id.* at ¶ 23. The payments were directed by the Debtor to his wife's bank account, but the Debtor had access to that account at all times. *Id.* at ¶¶ 24-27. The Debtor was thereby able to use and spend the funds as he wished. *Id.* The Debtor thereby received Settlement payments in 2012 and 2013. *Id.* at ¶ 23.

In the Answers to the Amended Complaint filed by the Debtor, he admitted:

(1) that the Debtor received the Settlement payments in 2012 and 2013 (Answer, ¶¶ 60-61, 66 (Adv. Dkt. 31));

(2) that the Debtor directed how he was to receive the Settlement payments (*Id.* at ¶¶ 67, 70, 74);

(3) that the Debtor had the payments delivered to his wife's account (*Id.* at ¶¶ 71-73, 75-77);

3

(4) that the Debtor spent the funds (*Id.* at ¶¶ 69, 91);

(5) that the Debtor's Schedules and Statement of Financial of Affiars did not contain the Settlement payments (*Id.* at ¶¶ 78-81, 84);

(6) that the Debtor did not schedule the payments, albeit unintentionally (*Id.* at ¶ 86); and

(7) that the aforementioned acts were committed within a year of filing for bankruptcy (*Id.* at ¶ 92).

The Debtor filed under Chapter 7 of the Bankruptcy Code on October 10, 2012. The Debtor's schedules state that he has no account receivables or income. *Id.* at ¶ 28; *see also* Schedules B, I (Dkt. 1). Moreover, the Debtor's Statement of Financial Affairs state that he received income from employment or operation of business in 2009 and 2010, but nothing after that. *Id.* at ¶ 29; *see also* Statement of Financial Affairs (Dkt. 1). No other source of income is provided. *Id.* Neither the Settlement nor the Settlement payments were included on the Debtor's schedules. Moreover, the Debtor never amended the filings to include these assets.

On or about August 4, 2015, the Plaintiff served the Debtor with Requests for Admission. The Plaintiff requested that the Debtor admit, in relevant part, the following:

26. That Arthur Friedman directed funds from the settlement of lawsuit . . . to be paid into an account held by his wife.

28. [That] Arthur Friedman intentionally failed to disclose the settlement of lawsuit . . . on his bankruptcy schedules to hid (sic) the settlement from the trustee and creditors.

4

29. That Arthur Friedman concealed property of the debtor within one year prior to the date of filing the petition for relief under chapter 7 of the bankruptcy code with the intent to defraud a creditor.

30. That Arthur Friedman intended to defraud a creditor when [he] concealed, transferred or removed property o (sic) the estate after the filing of the petition for relief under chapter 7 of the bankruptcy code.

31. That Arthur Friedman spent some of the proceeds of the settlement of lawsuit . . . during the one year before the petition for relief was field.

32. That Arthur Friedman spent the remaining proceeds of the settlement of lawsuit . . . after the petition for relief was filed.

Plaintiff's Requests for Admission, Ex. A to Plaintiff's Statement of Material Facts, ¶¶ 26, 28-32 (Adv. Dkt. 39-2).[2]

The Debtor did not respond to these Requests for Admission within the 30-day time limit prescribed by Fed. R. Civ. P. 36(a)(3), or at any time. Instead, in his response to this Motion, the Debtor, for the first time, claimed that he is under investigation by the United States Attorney for the Northern District of Illinois and has been advised not to reply to the Requests for Admission as any reply could be deemed a violation of his Fifth Amendment right not to incriminate himself. Response to Motion for Summary Judgment and Motion to Dismiss, ¶¶ 5, 7 (Adv. Dkt. 44). The Debtor argues that the privilege prevents the Plaintiff's Requests for Admission from

---

[2] Generally, it is inappropriate to request admissions to pure legal conclusions. *Hart v. Dow Chem.*, No. 95 C 1811, 1997 WL 627645, at *8 (N.D. Ill. Sept. 30, 1997). However, "requests on mixed matters of law and fact or other legal conclusions that directly relate to the facts of the case are authorized." *Id.* To the extent that these requests for admission relate to pure legal conclusion, the Court finds that they sufficiently relate to the facts of the case and finds no issue with them.

being deemed admitted. This, in turn, might create a genuine dispute of material fact that
prevents entry of the Motion for Summary Judgment.[3]

 Therefore, this inquiry begins with a discussion of the Debtor's Fifth Amendment rights.

### III. FIFTH AMENDMENT

 The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal
case to be a witness against himself[.]" U.S. Const. amend. V. This privilege guarantees an
individual's right "to remain silent unless he chooses to speak in the unfettered exercise of his
own will, and to suffer no penalty . . . for his silence." *Schmerber v. California*, 384 U.S. 757,
760-61, 86 S.Ct. 1826, 1830-31, 16 L.Ed.2d 908 (1966).

 The privilege may be "asserted in any proceeding, civil or criminal, administrative or
judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness
reasonably believes could be used in a criminal prosecution or could lead to other evidence that
might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d
212 (1972). The privilege not only extends to answers that would in themselves support a
conviction but likewise embraces those which would furnish a link in the chain of evidence
needed to prosecute a claimant for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 71
S.Ct. 814, 95 L.Ed. 1118 (1951). "This provision of the Amendment must be accorded liberal
construction in favor of the right it was intended to secure." *Id.* at 486.

 The privilege, however, is not without its limits. It "must be confined to instances where
the witness has reasonable cause to apprehend danger from a direct answer." *Id.* An individual

---

[3] Debtor also argues that the motion is not proper as the Motion for Summary Judgment itself is directed against a
different defendant; Leon Bilis. *See* Motion for Summary Judgment (Adv. Dkt. 39). In its Reply, the Plaintiff
explains that this was merely a scrivener's error as the rest of the Motion for Summary Judgment relates to the
Debtor. The Court will disregard this error as everything else in this Motion, from the Motion's caption to the
Memorandum of Law in support of the Motion, is directed at the Debtor, and therefore the Court will treat it as such.

does not have a free hand to refuse to answer any and all questions by virtue of the Fifth Amendment's self-incrimination clause. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002). Nor is an individual "exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination." *Hoffman*, 341 U.S. at 486. Once an individual has asserted the privilege, then "[i]t is for the court to say whether his silence is justified[.]" *Id* (citing *Rogers v. United States*, 340 U.S. 367, 71 S. Ct. 438, 439, 95 L. Ed. 344 (1951)).

In evaluating the Debtor's assertion of the Fifth Amendment privilege against self-incrimination, the Court first looks to whether the Debtor has properly asserted the privilege, and, if so, then whether he waived the privilege through prior statements.

### A. Asserting the Fifth Amendment Privilege

In his response to this motion, the Debtor, for the first time, stated that he "has been notified that he is a target of criminal investigation by the office of the United States Attorney for the Northern District of Illinois." Response, ¶ 5 (Adv. Dkt. 44). This, according to the Debtor, justifies his failure to respond to the Plaintiff's Requests for Admission. *Id.* at ¶¶ 7, 10. The Debtor, however, is not relieved from answering by merely asserting his Fifth Amendment privilege. *Hoffman*, 341 U.S. at 486. Rather, the Court must decide if his assertion of the privilege is justified. *Id.* In doing so, there is a two-part test to determine whether the Debtor's privilege has been validly asserted: "First, is his fear of criminal prosecution sufficient to support an assertion of the privilege at all? Second, if so, does responding to inquiries in this proceeding present some real danger of incrimination?" *See In re Connelly*, 59 B.R. 421, 432-33 (Bankr. N.D. Ill. 1986). Each of those questions will now be addressed in turn.

1.   Fear of Prosecution

"The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. U.S.*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (citing *Rogers*, 340 U.S. at 374; *Brown v. Walker*, 161 U.S. 591, 16 S. Ct. 644, 645, 40 L. Ed. 819 (1896)). "The protection of the Fifth Amendment applies so long as there is a possibility of prosecution, regardless of a judge's assessment of the likelihood of prosecution." *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981) *aff'd sub nom. Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S. Ct. 608, 74 L. Ed. 2d 430 (1983). "Thus, an assertion of the privilege is only rejected as a threshold matter when the danger of incrimination demonstrated is not real and appreciable, but only imaginary, remote and speculative." *In re Connelly*, 59 B.R. 421, 433 (Bankr. N.D. Ill. 1986) (citing *Ueckert v. C.I.R.*, 721 F.2d 248 (8th Cir.1983); *McCoy v. C.I.R.*, 696 F.2d 1234 (9th Cir.1983)).

In *Connelly*, the debtor's attorneys asserted that debtor believed he was under investigation by the S.E.C., F.B.I., F.D.I.C., Justice Department, and possibly the United States Attorney. The debtor provided no basis for such a belief. Rather, the opinion noted that the United States Attorney's office had denied a grant of immunity. This, it was reasoned, might support the debtor's belief that he is under investigation. *Id.*

As in *Connelly*, the Debtor here has provided no specific support or basis for the assertion that he is currently under investigation. Unlike *Connelly*, however, there was nothing provided whereby the Court even might infer the possibility of prosecution. The Debtor fails, at the very minimum, to provide an affidavit in support of this belief that he is under investigation. Apart

from a brief and unsupported statement in the Debtor's Response to this Motion, there is absolutely no showing that the Debtor is actually in fear of prosecution.

Moreover, the fact that the Debtor waited until his Response to a Motion for Summary Judgment to assert his Fifth Amendment privilege makes the assertion suspect. The Debtor claims that he knew of a supposed investigation at the time he was served with the Plaintiff's discovery requests. Response, ¶¶ 6-7 (Adv. Dkt. 44). If that was the case, then that would have been the proper time to assert the privilege rather than to wait months and suffer the potential consequences of delay. *See e.g., Roberts v. United States*, 445 U.S. 552, 559, 100 S. Ct. 1358, 1364, 63 L. Ed. 2d 622 (1980) ("The Fifth Amendment privilege against compelled self-incrimination is not self-executing. . . . the privilege may not be relied upon unless it is invoked in a timely fashion.").

As such, based on the information before it, the Court is unable to conclude that there is a real possibility of prosecution.

### 2.     Danger of Incrimination

Despite the foregoing, based on the record of this proceeding, the question whether the Requests for Admission provided a real danger of incrimination will be considered to the extent possible. "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if on did answer it (and answer it truthfully) must have some tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d at 663-64. "Only the [debtor] knows whether the apparently innocent disclosure sought may incriminate him, and the burden appropriately lies with him to make a timely assertion of the privilege." *Garner v. United States*, 424 U.S. 648, 655, 96 S. Ct. 1178, 1183, 47 L. Ed. 2d 370 (1976). The Debtor must show that "[s]ome nexus between the risk of

9

criminal conviction and the information requested must exist." *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980). The Debtor "need not establish that an answer to a question or an explanation why an answer cannot be given will in fact incriminate. He must, however, tender some credible reason why a response would pose a real danger of incrimination, not a remote and speculative possibility." *Id* (citing *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 1674, 32 L.Ed.2d 234 (1972)).

Moreover, the Debtor must do so for each question asked and a blanket assertion of privilege simply will not suffice to establish the "reasonable cause to apprehend danger from a direct answer." *Hoffman*, 341 U.S. at 486; *see also Shakman v. Democratic Org. of Cook Cty.*, 920 F. Supp. 2d 881, 888 (N.D. Ill. 2013) (collecting cases rejecting blanket claims of privilege).

The Debtor failed to meet his burden. The sole explanation that the Debtor has given for his failure to answer the Requests for Admission can be found in the following:

> 5. Arthur Friedman has been notified that he is a target of a criminal investigation by the office of the United States Attorney for the Northern District of Illinois. . . .
>
> 7. That Arthur Friedman was advised that he could not reply to the requests while he was a target of the above investigation, as it could be deemed a violation of the his Fifth Amendment right not to incriminate himself. . . .
>
> 10. . . . His failure to answer the Requests for Admission was based on his Fifth Amendment rights not to testify against himself while he is a target of a criminal investigation.

Response, ¶¶ 5, 7, 10 (Adv. Dkt. 44). The Debtor did not state the factual basis for these assertions, nor the date when he initially became aware of the investigation.

Not only is this an impermissible blanket assertion of the privilege, but it provides the Court with absolutely no information to begin its inquiry. As was stated in *Connelly*, the Debtor "must give at least some minimal explanation as to how his answers to those and other questions could potentially furnish a link in the chain of evidence needed to prosecute him for conduct under investigation." *Connelly*, 59 B.R. at 435. Having been provided no further information as to the matter, the Court is unable to conclude whether the questions posed any danger of incrimination to the Debtor.

As stated earlier, the Debtor bears the burden of asserting the Fifth Amendment privilege against self-incrimination. *Garner* 424 U.S. at 655. However, the Court, not the Debtor, ultimately decides whether his silence is justified. *Hoffman*, 341 U.S. at 486. Having failed to provide sufficient information, the Debtor's blanket assertion of his privilege is insufficient to invoke the privilege. As such, the Debtor's lack of response to the Plaintiff's Requests for Admission will be treated based upon the rules as found in Fed. R. Civ. P. 36(a)(3).

## B.     Waiver of Fifth Amendment Privilege

Alternatively, the Court notes that the Debtor's participation in this case, and in particular the filing of his Answers to the Complaint and Amended Complaint, amounted to a waiver of the Fifth Amendment privilege. The "Fifth Amendment privilege against compelled self-incrimination is not self-executing." *Roberts v. United States*, 445 U.S. 552, 559, 100 S. Ct. 1358, 1364, 63 L. Ed. 2d 622 (1980). To receive its benefits, an individual "*must assert the privilege* rather than answer if he desires not to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S. Ct. 1136, 1143, 79 L. Ed. 2d 409 (1984) (emphasis added). "But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." *Id*. Moreover,

11

"[d]isclosure of a fact waives the privilege as to details." *Rogers v. United States*, 340 U.S. 367, 373, 71 S. Ct. 438, 442, 95 L. Ed. 344 (1951). "Thus, if the witness himself elects to waive his privilege as he may doubtless do, since the privilege is for his protection and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure." *Id.*

Courts have recognized litigants' concern that answering a complaint may result in waiving one's Fifth Amendment privilege against self-incrimination. *See e.g. S.E.C. v. Arias*, No. CV 12-2937 ADS GRB, 2012 WL 4849151, at *1 (E.D.N.Y. Sept. 14, 2012) report and recommendation adopted, No. 12 CV 2937 DRH GRB, 2012 WL 4849346 (E.D.N.Y. Oct. 11, 2012*); United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *1 (N.D. Ill. Mar. 4, 2010); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141 (E.D.N.Y. 2005). To alleviate this concern the Seventh Circuit has held that a defendant can claim his Fifth Amendment privilege in his answer without having it deemed an admission. *National Acceptance Co. v. Bathalter*, 705 F.2d 924, 932 (7th Cir. 1983). However, by answering a complaint, the defendant runs the risk of waiving his Fifth Amendment privilege when he admits a fact and thereby is required to disclose those details. *See Rogers*, 340 U.S. at 373 ("Disclosure of a fact waives the privilege as to details."); *see also McComb v. Blue Star Auto Stores*, 164 F.2d 329, 331 (7th Cir. 1947) ("Failure to deny the violations alleged [in the plaintiff's complaint] constituted an admission of the facts alleged.").

In this case, the Debtor filed an Answer to the original Complaint (Adv. Dkt. 5) as well as an Answer to the Amended Complaint (Adv. Dkt. 36). In his Answer, the Debtor makes a number of admissions and statements that directly relate to the Requests for Admission. For example, the Debtor asserts that the funds from the Lawsuit Settlement were paid into an account

held by his wife (Answer, ¶¶ 71-73, 75-77 (Adv. Dkt. 36)) and admits that he "received, or directed where funds would be paid" in 2012 and 2013. *Id.* at ¶¶ 70, 74. These averments directly relate to Plaintiff's request that the Debtor admit that he "directed funds from the settlement of lawsuit . . . to be paid into an account held by his wife." Plaintiff's Requests for Admission, Ex. A to Plaintiff Statement of Material Facts, ¶ 26 (Adv. Dkt. 39-2). Similar admissions or statements can be found in the Answer that relate to the other Requests for Admission. The overall result being that once the Debtor decided voluntarily to make these statements in his Answer, he would thereafter be required to supply the details about these statements. Therefore, the Fifth Amendment privilege is not a shield that the Debtor can use to keep from answering the Plaintiff's discovery requests.

Additionally, the Fifth Amendment privilege, like other privileges, may not be relied upon unless invoked in a timely fashion. *United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026 (N.D. Ill. 2010) (collecting cases). In *Veluchamy*, the court considered the defendant's motion to reconsider the court's earlier ruling in *United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *1 (N.D. Ill. Mar. 4, 2010). The plaintiff had served a series of interrogatories and requests for production of documents on the defendant. The defendant never answered the discovery requests, but instead notified the plaintiff that the defendant was under investigation by the government. Importantly, the defendant never asserted his Fifth Amendment privilege, but rather merely alluded to it. The *Veluchamy* court found that the defendant cannot do so; he must either respond to discovery, assert the Fifth Amendment privilege, or seek a stay of discovery. Having not done any of these, the opinion held that the defendant in that case had to answer the discovery requests. In ruling on the motion to reconsider, the court held that the defendant had waived his Fifth Amendment privilege by failing to raise timely the objection. In

13

deciding so, the court relied on precedent and Fed. R. Civ. P. 33(b)(4), which provides that any objection to interrogatories that is not timely made is deemed waived unless the court excuses that failure. *See Veluchamy*, 747 F. Supp. 2d at 1027; *see also* Fed. R. Civ. P. 33(b)(4).

A similar result is found here. "The failure to object to a discovery request in a timely fashion may constitute a waiver of the objection, including objections based on privilege." *Applied Sys., Inc. v. N. Ins. Co. of New York*, No. 97 C 1565, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997) (collecting cases). While Fed. R. Civ. P. 36 does not contain the same 'untimely objections result in waiver' language as Fed. R. Civ. P. 33, courts have nonetheless interpreted Rule 36 as impliedly containing such provision. *Compare* Fed. R. Civ. P. 33(b)(4) *with* Fed. R. Civ. P. (36)(a)(5); *see also Fid. Nat'l Title Ins. Co. v. Tahoe Reg'l Planning Agency*, 2014 U.S. Dist. LEXIS 38384, *13 (D. Nev. Mar. 21, 2014) (collecting cases).

This result is reasonable given the operation of Rule 36. Fed. R. Civ. P. 36 (made applicable by Fed. R. Bankr. P. 7036). Rule 36 requires a respondent to either answer or object within 30 days and if the respondent does neither then the matter is deemed admitted. Fed. R. Civ. P. 36(a)(3). If a matter is admitted, then the only way for a party to assert an objection is by withdrawing the admission by motion to the court. *See id.* at 36(b). The court may allow such withdrawal and objection only if "it would promote the presentation of the merits of the action *and* if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id* (emphasis added). In this regard, the test for withdrawal and assertion of an objection under Rule 36 is much more stringent than the test found in Rule 33 for asserting a late objection. *See* Fed. R. Civ. P. 33(b)(4) (made applicable by Fed. R. Bankr. P. 7033) ("Any ground not stated in a timely objection is waived unless the court, *for good cause*, excuses the failure") (emphasis added). Moreover, this rule complies with the Supreme Court's

14

directive that the Fifth Amendment privilege against self-incrimination "may not be relied upon unless it is invoked in a timely fashion." *Roberts*, 445 U.S. at 559. As such, the Debtor here should have invoked his privilege as an answer to the Plaintiff's Complaint and Amended Complaint, as well as the discovery requests. Waiting until this Motion for Summary Judgment is far too late. Having failed to timely assert his privilege, the privilege is considered waived.

In short, both because the Debtor has failed properly to assert his Fifth Amendment privilege and because he waived it, he is unable to rely on the privilege in responding to this Motion to Summary Judgment. Moreover, because the Debtor cannot rely on the Fifth Amendment privilege here, the Court will treat the Plaintiff's Requests for Admission as admitted under the default rule found in Fed. R. Civ. P. 36(a)(3).

## IV.   SUMMARY JUDGMENT

A motion for summary judgment shall be granted if the movant can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). Initially the moving party bears the burden of demonstrating absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must go beyond the pleadings and adduce evidence to establish that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party is required to do more than show mere existence of some metaphysical doubt as to the material facts or some alleged factual dispute between the parties in order to defeat the motion, unless the disputed fact is determinative of the outcome under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The nonmoving

15

party may not rest on its pleadings or on conclusory allegations in affidavits. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir. 1994). In determining whether a genuine issue of material fact exists the Court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

The Plaintiff brought this motion as to Count IV of the Amended Complaint. Count IV seeks to deny the Debtor's discharge pursuant to sections 727(a)(2), (a)(4), (a)(5) and (a)(7) of the Bankruptcy Code. Rule 56(a) allows a party to "move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). Therefore, for summary judgment to be granted on Count IV of the complaint and for the Debtor's discharge to be denied, the Plaintiff must meet its burden under at least one of the four statutes.

Because the Debtor failed to file an opposing statement of facts, all the factual allegations found in the Plaintiff's Statement of Material Facts are deemed admitted. Local Rule 7056-2(B); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Moreover, a Seventh Circuit opinion has held that "[a]dmission made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).

Only one precedent was found that could potentially prevent *Kasuboski*'s application here; *F.T.C. v. Consumer All., Inc.*, No. 02 C 2429, 2003 WL 22287364, at *1 (N.D. Ill. Sept. 30, 2003). The *Consumer Alliance* court held that it could not rely on admissions to which the defendants asserted their Fifth Amendment privilege as support for a motion for summary judgment. *Consumer All., Inc.*, 2003 WL 22287364, at *4. There, the defendants asserted that

16

privilege in their answer to the plaintiff's requests for admission. The plaintiff asked the court to make an adverse inference against the defendants and deem the requests for admission as admitted. Citing prevailing Supreme Court and Seventh Circuit precedent, the *Consumer Alliance* opinion concluded that it could not do so. *Id.* at *3-4.

This case, however, differs from *Consumer Alliance* for two reasons. First, in *Consumer Alliance* the defendants properly and timely asserted the privilege in their answer to discovery requests. Here, the Debtor has not done that. Second, in *Consumer Alliance*, the plaintiff asked for admissions based on the rule that a court can draw adverse inferences to the Fifth Amendment privilege in a civil case. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]"). Here, no adverse inference is requested. Rather, the Opinion here is just following the rule for unanswered requests for admission. *See* Fed. R. Civ. P. 36(a)(3). Therefore, the *Consumer Alliance* case is inapplicable here and the Plaintiff can freely use the default admissions as support for its Motion for Summary Judgment. With that, this Opinion now turns to the claims found in Count IV of the Amended Complaint.

### A.     Section 727(a)(2)

Section 727(a)(2) provides that a court can deny a debtor's discharge if

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--(A) property of the debtor, within one year

17

before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A-B). The Plaintiff argues that both sections 727(a)(2)(A) and (B) have been established.

The Debtor has admitted that he received payments from the Lawsuit Settlement in 2012 and 2013. Statement of Material Facts, ¶¶ 16-19, 23 (Adv. Dkt. 39-1). Those payments and the right to receive those payments were property of the bankruptcy estate. *See* 11 U.S.C. § 541. The Debtor also admitted that he both directed how the payments were to be made and had them transferred to his wife's account. *Id.* at ¶¶ 24, 27. The payments were made in the year 2012, within a year of filing, and in 2013, after the bankruptcy case was filed. *Id.* at ¶¶ 19, 23 (Payments were made on April 15 and September 15 of 2012 and again in 2013); *see generally* Dkt. 1 (Bankruptcy case was filed on October 10, 2012). The only remaining element, the Debtor's asserted intent to hinder, delay, or defraud, was met by the Debtor's admission that the Debtor hid property with intent to defraud and conceal that property. *Id.* at ¶¶ 33-35; *see also* Plaintiff's Requests for Admission, Ex. A to Plaintiff Statement of Material Facts, ¶¶ 28-30 (Adv. Dkt. 39-2).

This admission is buttressed by the fact that the Debtor did not scheduled this property on his original schedules. *See* Schedules (Dkt. 1). Moreover, the Debtor had the three-year pendency of his bankruptcy case, including two years since this adversary was filed, to amend his schedules to include this property but has yet to do so. Similarly, the Debtor's Statement of Financial Affairs does not include any income received on account of the Lawsuit Settlement payments. *See id.* While the Debtor claims that he had a "lapse of memory" as to the Lawsuit Settlement when filling out his schedules (Response to Motion for Summary Judgment, ¶ 11

(Adv. Dkt. 44)), such lapses might be rectified by amending one's schedules, not by continuing to keep the information secret.

Therefore, it is found and held here that the Debtor, with intent to hinder, delay, and defraud, caused the transfer of estate property both within a year of filing his bankruptcy case and thereafter, within the meaning of 11 U.S.C. § 727(a)(2).

### B. Section 727(a)(4)

Section 727(a)(4) prevents the debtor's discharge if

the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage,

or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title,

any recorded information, including books, documents, records, and papers,

relating to the debtor's property or financial affairs;

11 U.S.C. § 727(a)(4).

The Plaintiff argues and it is found and held that the Debtor's conduct falls under subsections (A), (C), and (D) of section 727(a)(4): First, that the Debtor knowingly and fraudulently made a false oath when the Debtor filed his schedules and statement of financial affairs without including the Settlement payments on those documents; and second, by forbearing to act, the Debtor was able to receive money by being able to retain and spend the Settlement payments. Finally, the Debtor admitted to have withheld information regarding the Settlement from an officer of the estate. Because of the

19

disjunctive "or" found at the end of section 727(a)(4)(C), the Plaintiff need only establish one of the aforementioned elements to establish his section 727(a)(4) claim.

As discussed earlier, the Debtor admitted to receiving the Lawsuit Settlement payments and admitted to not including them on his schedules or statement of financial affairs. Moreover, the Debtor withheld any mention of that property until after the Plaintiff brought this adversary proceeding. Finally, the Debtor also admitted that he did so knowingly and fraudulently. *See* Plaintiff's Requests for Admission, Ex. A to Plaintiff's Statement of Material Facts, ¶¶ 28-30 (Requesting that the Debtor admit that he intentionally failed to disclose assets on his schedules and that the Debtor did so to defraud). Therefore, at the very least the Plaintiff has established that the Debtor knowingly and fraudulently made a false oath. Furthermore, it must be concluded that by these actions the Debtor received money that would otherwise belong to the estate. As such, the elements under section 727(a)(4) have been established.

## C.    Section 727(a)(5)

Section 727(a)(5) denies the debtor's discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). There is no doubt that the Lawsuit Settlement payments are currently unaccounted for. The only explanation that the Debtor provides is that the "property of the estate was spent for living expenses, that he did so innocently as he did not know at the time that the funds were an asset of the estate." Answer, ¶ 91 (Adv. Dkt. 31). However, the Debtor received $150,000, less his attorney's fees, over 2012 and 2013.

20

Half of that was received *after* the bankruptcy case was filed and should have been turned over to the trustee as property of the estate. The Debtor provides no accounting of these funds. Moreover, as stated earlier, the Debtor has admitted to intentionally hiding these assets. Finally, even though the Debtor admits in both his Answer to the Amended Complaint and in his Response to the Motion for Summary Judgment that such assets were property of the estate, he has yet to schedule this asset on his schedules or account for the loss of this asset to the trustee. Therefore, the Plaintiff has sufficiently established that the Debtor failed to account for the loss of assets under 11 U.S.C. § 727(a)(5).

### D.     Section 727(a)(7)

Finally, section 727(a)(7) denies a discharge where "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7). If the debtor is an individual, 'insider' is defined as "relative of the debtor[.]" 11 U.S.C. § 101(31)(A)(i). 'Relative,' in turn, is defined as an "individual related by affinity[.]" *Id* at § 101(45). The Debtor's wife, therefore, is clearly considered to be an insider under the Bankruptcy Code. Moreover, as discussed above, the Debtor's intentional concealment of Lawsuit Settlement payments, failure to schedule the Settlement Payments, and then failure to account for the loss of that asset met the requirements of sections 727(a)(2), (a)(4) and (a)(5) of the Code, respectively. Furhtermore, these acts concerned the Debtor's wife as the transferee of the property. Therefore, the Plaintiff has likewise established the elements of section 727(a)(7).

## V.   CONCLUSION

Having established proof of the requirements of §§ 727(a)(2), (a)(4), (a)(5), and (a)(7) of the Bankruptcy Code, the Plaintiff has demonstrated that there is no genuine dispute of material facts as to Count IV that would prevent entry of judgment in the Plaintiff's favor as a matter of law. For the aforementioned reasons, summary judgment will be granted under all provisions plead in Count IV in favor of the Plaintiff, American Eagle Bank, by separate order.

ENTER:

Jack B. Schmetterer

United States Bankruptcy Judge

Dated this _29_ day of December, 2015

DEC 2 9 2015